AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Eastern District of Texas



FILED
JAN 0 7 2026
CLERK, U.S. DISTRICT COURT
TEXAS EASTERN

| United States of America | ) | |
|---|---|---|
| v. | ) | **SEALED** |
| | ) | Case No. 6:26-MJ-1 |
| SHABBIR ALI MOHAMMED | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __April 2025 through July 2025__ in the county of __Gregg__ in the __Eastern__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1349 | Conspiracy to Commit Wire Fraud. |

This criminal complaint is based on these facts:

See attached affidavit

☒ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Gregory Harry, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1-7-26

_____
*Judge's signature*

City and state: Tyler, Texas

John D. Love, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SHABBIR ALI MOHAMMED | Case No. 6:26-MJ-__1__<br><br>JUDGE LOVE<br><br>**Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND REQUEST FOR AN ARREST WARRANT

I, Gregory Harry, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a criminal complaint against **Shabbir Ali Mohammed (Mohammed)**, a male, date of birth September 26, 1996, a citizen of the Republic of India, with Indian Passport U4912503, and Alien Registration 141724437, for a violation of 18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud).

2. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since 2021. I am currently assigned to the Dallas Division's Tyler Resident Agency and was previously assigned to the Birmingham Division. Prior to joining the FBI, I served as a Detective with the Tyler, Texas Police Department for more than 10 years. As a Detective, I held a Master Peace Officer License in the State of Texas and served as an FBI Task Force Officer out of the FBI's Tyler Resident Agency. I earned a bachelor's degree in economics from Texas A&M University. In the course and scope of

Affidavit in Support of
Criminal Complaint - Page 1

my employment, I have conducted and led numerous investigations of criminal enterprises and individual criminal activity for acts in violation of state and federal statutes.

3. The statements in this affidavit are based on my personal observations, my training and experience, my investigation of this matter, and information obtained from other agents and witnesses. Because this affidavit is intended to show only that there is sufficient probable cause to support a criminal complaint and arrest warrant, I have not included each and every fact known to me concerning this investigation.

## PROBABLE CAUSE

### Victim 1 in Longview, Texas

4. Beginning in April 2025 and continuing through July 2025, a 76-year-old resident of Longview, Gregg County, within the Eastern District of Texas, hereinafter "Victim 1," lost $1,324,000 as part of a complex financial wire fraud scheme perpetrated by multiple individuals purporting to be affiliated with a U.S. based company and Victim 1's financial institution. The suspects convinced Victim 1 via wire communication that Victim 1 had unlawfully received money that he was not entitled to. Victim 1 was threatened with arrest or imprisonment if he did not repay the funds according to their specific directions. The suspects facilitated this scheme by way of computer take-over, voice call, electronic text message, and e-mail.

5. To repay the funds, Victim 1 was directed to withdraw his personal funds, and convert them to either cryptocurrency or gold bullion which would then be transferred to officials purportedly affiliated with legitimate financial institutions. Victim 1 deposited the cryptocurrency via an automated teller machine (ATM) and transferred the gold bullion physically via a series of "couriers" who met with Victim 1 at his residence in Longview, Texas. Victim 1 met with couriers on at least 13 occasions between April and July of 2025.

### CO-DEFENDANT IDENTIFIED AND REVIEW OF CELL PHONE

6. Through investigative means, I have identified Ravi Chandra Reddy Amanaganti, a national of the Republic of India, as one of the couriers involved in the scheme to defraud Victim 1. Amanaganti had been residing in Oklahoma and was present in the United States on a student visa.

7. During an interview with law enforcement, Amanaganti confessed to picking up packages at locations in Texas. An examination of Amanaganti's phone by law enforcement, documented multiple events on July 2, 2025, including travel from Oklahoma to Longview, Texas, and a video of Amanaganti opening a package containing gold bullion with Victim 1's name on the box.

8. A review of Amanaganti's phone also documented efforts to travel to an address in Primghar, Iowa, later determined to belong to a 55-year-old resident of Primghar, Iowa, hereinafter "Victim 2." Amanaganti's phone also revealed that Amanaganti, on July 3, 2025, rented a silver Toyota Camry bearing Washington license

plate CJX5384, and had recorded a video depicting the opening of a box containing $85,000 in U.S. currency.

### VICTIM 2 IN PRIMGHAR, IOWA

9. In January 2025, Victim 2 received an email containing a fraudulent arrest warrant bearing Victim 2's name and address. The arrest warrant was purportedly issued by the U.S. Department of Homeland Security (DHS) and bore the DHS Seal. The "warrant" featured a warrant number: "Warrant of Arrest No 64-82-73-FL" and listed charges including drug trafficking, money laundering, and theft by deception. It further included a brief description of the "investigation," which outlined that a drug shipment had been seized at a port of entry containing illegal drugs destined for Victim 2. The "warrant" also listed several names and titles purportedly affiliated with DHS. In the "warrant," Victim 2 was instructed to contact a specific phone number within 24 hours. The "warrant" was not formatted correctly, contained misspellings, and was not consistent with arrest warrants issued on behalf of the United States. I have since determined the warrant to be fraudulent.

10. Victim 2 complied with the directions on the "warrant" and placed a phone call to the number listed. Victim 2 initially spoke with two individuals who identified themselves as "officers" with DHS. These officers provided non-specific details to Victim 2 outlining his role in the alleged criminal activity, thereby legitimizing the "warrant." Eventually, Victim 2 was contacted by an individual identifying himself as Officer Daniel Escobar (Escobar) with the U.S. Drug Enforcement Administration

Affidavit in Support of
Criminal Complaint - Page 4

(DEA). Escobar provided Victim 2 with details to convince Victim 2 of the legitimacy of the "criminal investigation" and "warrant."

11. Victim 2 was informed that it was in his best interest to liquidate his financial assets and turn them over to the DEA for safekeeping, evidence, and as a gesture of good will and cooperation with the jury and Court. Fearing legal action, Victim 2 agreed to comply with Escobar's instructions and turn over money to the DEA. Victim 2 spoke to Escobar and others daily through the duration of the scam.

12. Victim 2 was provided with specific directions on how to package the cash currency and was required to stay on the phone for several hours on days when a cash pick-up was scheduled. At some point, a courier would show up, posing as a DEA Agent, and Victim 2 would transfer the currency to them. The courier would then leave the area.

13. Victim 2 was also directed to complete letters to a court jury which would be included with the packages containing currency. Victim 2 made copies of these letters and subsequently provided them to law enforcement.

14. These pick-ups occurred on at least 12 occasions between February and November 2025. Each time, Victim 2 provided the undercover DEA officer with an amount of U.S. currency – totaling in a loss of $1,559,500.

15. On July 3, 2025, Victim 2 met with a courier driving a silver Toyota with Washington license plate CJX5384, and Victim 2 provided the courier with $85,000 in cash. Based on the preceding information found in Amanaganti's phone, Amanaganti was identified as the courier for this pick-up from Victim 2. Ravi Amanaganti has since been

**Affidavit in Support of**
**Criminal Complaint - Page 5**

indicted by a grand jury in the Eastern District of Texas for Conspiracy to Commit Wire Fraud in furtherance of the captioned conspiracy.

### Shabbir Ali Mohammed Identified

16. On September 24, 2025, Victim 2 met with a courier at the South O'Brien Elementary School in Primghar, Iowa. The courier was driving a white Ford 4-door sedan, bearing California license plate 9TNX310, and was provided with $165,000 in currency.

17. At or near the same time, the O'Brien County (Iowa) Sheriff's Office (OCSO) responded to a call for service regarding "suspicious car and truck" at the South O'Brien Elementary School. The reporting party told OCSO that she overheard one of the parties, later identified as Victim 2, tell someone on the phone "there is a woman in the parking lot watching me."

18. OCSO responded to the school and found the sedan, a Ford 4-door sedan bearing California License Plate 9TXN310, still at the scene, but the "suspicious truck" appeared to have already left the location. OCSO identified **Shabbir Ali Mohammad (Mohammad)**, as the driver and sole occupant of the Ford sedan. **Mohammad** told OCSO that he was on his way to Sioux Falls and had stopped in the school parking lot to eat his lunch.

19. OCSO later reviewed surveillance video from the school and identified Victim 2's vehicle as the "suspicious truck" involved in the call for service. OCSO also saw that Victim 2 had been parked adjacent to **Mohammad**'s car moments before

leaving the location. OCSO contacted Victim 2 via phone later that day. At that time, Victim 2 claimed he had been at the school to meet someone who never showed up. Victim 2 also initially denied knowing anything about the other vehicle (**Mohammad**'s Ford sedan). Victim 2 has since admitted that he provided $165,000 in cash on September 24, 2025, to the courier driving the white car. As such, the courier from the September 24, 2025, pick-up has been identified as **Shabbir Ali Mohammad**.

20. Victim 2's September 24, 2025 handwritten letter, which was included with the $165,000 in cash picked up by **Mohammad**, reads in part:

> "I am requesting the court Jury members to except[sic] the funds that I have withdrawn from my own personal bank account as a piece of evidence and take it as exceptional that I am willing to coordinate[sic] with the DEA and also am willing to show my positive attention towards this case by following all the protocols and instructions which has[sic] been set by the Dyer Federal Court House in my case file till[sic] the time I am proven innocent or victim and until the time my arrest warrant doesn't get cancelled.
> I will be in contact with the DEA agent Daniel Escobar +[sic] following all the protocols +[instructions] that are given to me very strictly."

The letter bears Victim 2's name, social security number, a case ID, and warrant ID number and is signed and dated by Victim 2.

## CONCLUSION

21. Based on the foregoing, I submit that there is probable cause to believe that **Shabbir Ali Mohammed** has violated 18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud), and I am applying for an arrest warrant. I swear under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

**Affidavit in Support of**
**Criminal Complaint - Page 7**

## REQUEST FOR SEALING

22. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of the criminal complaint, including this affidavit. I believe that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

_____
Gregory Harry, Special Agent
Federal Bureau of Investigation

SUBSCRIBED AND SWORN to before me this 7th day of January 2026.

_____
HONORABLE JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE

Affidavit in Support of
Criminal Complaint - Page 8